## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRYAN PERRY,                     :        Civil No. 3:16-cv-1667
                                 :
      Petitioner               :        (Judge Mariani)
                                 :
      v.                       :
                                 :
MICHAEL OVERMYER, *et al.*,      :
                                 :
      Respondents              :

## MEMORANDUM

Petitioner Bryan Perry ("Perry") filed the instant petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court

of Common Pleas of Dauphin County, Pennsylvania. (Docs. 1, 11). For the reasons

discussed below, the petition will be granted in part and denied in part.

## I.    Factual Background

The factual background of this case has been summarized by the state court as

follows:

> On the night of April 5, 2011, Priest Hamilton (hereinafter "Mr. Hamilton") was
> with Derrick Mitterlehner (hereinafter "Mr. Mitterlehner") at Mr. Hamilton's
> mother's house. (N.T. 15, 33, 53-54). Thereafter, Mr. Hamilton drove Mr.
> Mitterlehner to his house on Kensington Street. (N.T. 15). Mr. Hamilton
> stopped the vehicle in the middle of the street to talk with Mr. Mitterlehner.
> (NT 16, 34-35, 54). Then, Mr. Mitterleh[n]er exited the passenger front side
> of the vehicle and walked around to the backside of the vehicle. (N.T, 16, 38,
> 54, 66).
>
> Roughly around the moment Mr. Mitterlehner was exiting the vehicle, [Perry]
> appeared from the side of a house on the street nearest the passenger side

of the vehicle and walked towards the vehicle. (N.T. 16, 18, 35, 37). [Perry] stopped and stood about two to three feet in front of the vehicle, pulled out a gun, and pointed it at Mr. Hamilton through the windshield. (N.T. 16, 21, 54, 67). Once Mr. Hamilton realized a gun was pointed, at him, but before a shot was fired, he put the vehicle in drive. (N.T. 16, 37-38, 41, 50,54)[.] [Perry] jumped to the side of the moving vehicle and shot a bullet through the driver's side mirror; which exited through the front of the mirror, went through the driver's door window, and entered the top edge of the driver's side door. (N.T. 16[]-17, 23, 29-31, 92). After Mr. Hamilton put the vehicle in drive, he testified he heard about three more shots fired. (N[.]T.19). Further, he saw through the remainder of the driver's side mirror [Perry] pointing the gun in [what he assumed to be] Mr. Mitterlehner's direction and then back at his vehicle. (N.T. 19-20, 42-44). Mr. Hamilton identified [Perry] in Court as the man who stood in front of his vehicle with a gun. (N.T. 21). Mr. Hamilton testified he did not know [Perry] before that night. (N.T. 17, 21, 3334, 37, 51). Conversely, [Perry] testified he knew Mr. Hamilton from seeing him around the neighborhood. (N.T. 136-139). [Perry] stated he had no problems with Mr. Hamilton. (N.T. 139-141).

Meanwhile, Mr. Mitterlehner was left in plain view of the individual with the gun, whom he testified he recognized as his neighbor; [Perry]. (N.T. 55, 65-66, 68). Mr. Mitterlehner took off running. (N.T. 56, 68-69). Thereafter, he heard about two or three more shots fired. (N.T. 57, 68). Mr. Mitterlehner said he did not see the gun nor was he sure [Perry] was shooting at him, but he knew [Perry] had a gun because the sound was distinctive, (N.T. 57, 68, 70, 73-74). Mr. Mitterlehner identified [Perry] in Court as the individual he saw that night. (N.T. 55). Mr. Mitterlehner admitted there was friction between himself and [Perry] because he had sold [Perry]'s stereo equipment. (N.T. 65, 80).

Officer Kirk Aldrich is employed by the Harrisburg City Police Department. (N.T. 84). He was dispatched to the 2000 block of Kensington Street the night of April 5, 2011. (N.T. 84). Officer Aldrich testified he photographed, among other things, the overall view of the scene, evidence that was found, and where the evidence was found in relation to the scene. (N.T. 85-90). He agreed that the scene was darker than what was depicted in the photographs. (N.T. 96-97). Officer Aldrich collected two shell casings and placed them in a sealed envelope. (N.T. 90-91). At the police station, Officer Aldrich photographed Mr.

2

Hamilton's vehicle. (N.T. 91-94). He conf[ir]med that part of the driver's side mirror was still intact, but the hole from the bullet was visible. (N.T. 98).

> Detective Christopher Krokos, with the Harrisburg Police Department as part of the Special Operations Unit, was assigned to this case. (N.T. 99-100). Detective Krokos and Detective Iachini interviewed the two victims separately. (N.T. 101). Both victims separately identified [Perry] in a photo line-up as the man who committed the crimes. (N.T. 23-24, 31-32, 63-64, 102-108, 117; Cmw[l]th Exhibits 1, 2). Thereafter, Detective Krokos located [Perry] in Camp Hill at his girlfriend's house and placed him under arrest. (N.T. 110). He searched the house and found some clothing that was admitted into evidence[.] (N.T. 111-112, 141-142). Later, a neighbor contacted the police to report finding more shell casings. (N.T. 112-113)[.] Detective Krokos testified that the two brass 9 millimeter casings found by the neighbor were the same caliber and brand as the other two casings that were located by Officer Aldrich. (N.T. 113). The Pennsylvania State Police Regional Laboratory report confirmed that all four of these casings were shot from the same firearm; a 9 millimeter handgun. (N.T. 114). Further, Detective Krokos requested a report from the Pennsylvania State Police to check if [Perry] had a license to carry a firea[rm]. (N.T. 115). The parties stipulated to the results of the report: [Perry] did not have a license to carry a firearm in Pennsylvania. (N.T[.] 115-117). However, the gun was never recovered by the police. (N.T. 122).

*Commonwealth v. Perry*, 2014 WL 10558055, at *4-5 (Pa. Super. 2014) (citing PCRA Court

Opinion, dated May 15, 2014)).

## II.   State Court Proceedings[1]

On November 15, 2011, a jury convicted Perry of criminal attempt to commit

---

[1]   A federal habeas court may take judicial notice of state court records. *Montanez v. Walsh*, 2014 WL 47729, at *4 n.2 (M.D. Pa. Jan. 7, 2014); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in reviewing this petition, the Court takes judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Dauphin County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania.

homicide, aggravated assault, carrying a firearm without a license, persons not to possess

firearms, and recklessly endangering another person. (Doc. 1, p. 4; *see also*

https://ujsportal.pacourts.us, electronic docket number CP-22-CR-0002139-2011). At trial,

Perry was represented by attorney Deanna Muller. On January 27, 2012, the trial court

imposed an aggregate sentence of 25 to 50 years' imprisonment. (*Id.*). On February 6,

2012, Perry filed a post-sentence motion requesting modification of his sentence and a new

trial. The trial court granted Perry's request for modification of his sentence, but denied his

request for a new trial. On March 15, 2012, the trial court issued an Amended Sentencing

Order and again imposed an aggregate sentence of 25 to 50 years' imprisonment. (Doc.

18-1, pp. 50-51, Amended Sentencing Order).

Attorney Andrea Haynes filed a direct appeal on behalf of Perry. (Doc. 1, pp. 4-5;

*see also* https://ujsportal.pacourts.us/DocketSheets/Appellate.aspx, electronic docket

number 656 MDA 2012). On December 20, 2012, the Pennsylvania Superior Court

affirmed the judgment of sentence. (*Id.*). Perry did not file a petition for allowance of appeal

with the Pennsylvania Supreme Court, therefore his judgment of sentence became final

thirty days later on January 21, 2013. *See* 42 PA. CONS. STAT. § 9545.

On November 8, 2013, Perry filed a *pro se* petition for post-conviction collateral relief

pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. *See*

https://ujsportal.pacourts.us, electronic docket number CP-22-CR-0002139-2011. The

PCRA court appointed counsel, attorney Jennifer Tobias, who subsequently filed an

amended PCRA petition. (Doc. 18-1, pp. 66-80, Amended PCRA Petition). On April 16,

2014, the PCRA court conducted an evidentiary hearing. (Doc. 18-1, pp. 89-100). Attorney

Tobias represented Perry at the April 16, 2014 hearing. (*Id.*). On May 15, 2014, the PCRA

court dismissed the petition.[2] *See Commonwealth v. Perry*, 2014 WL 10558055, at *8 (Pa.

Super. 2014). Perry filed a timely notice of appeal with the Pennsylvania Superior Court.

(*See id.*). On appeal, Perry raised the following three issues:

1. Whether the trial court erred by allowing unmarked evidence to be submitted to the jury?

2. Whether trial counsel[, Deanna Muller, Esquire ("Attorney Muller"),] was ineffective for failing to present a defense and for failing to call alibi witnesses?

3. Whether appellate counsel[, Andrea Haynes, Esquire ("Attorney Haynes"),] was ineffective?

(Doc. 18-1, pp. 107-114; *Commonwealth v. Perry*, 2014 WL 10558055, at *1). On

December 30, 2014, the Pennsylvania Superior Court vacated the PCRA court's May 15,

2014 order and remanded the case to the PCRA court for further proceedings. *Id.* The

Superior Court ordered "the PCRA court to conduct an evidentiary hearing on the issue of

whether Attorney Haynes [appellate counsel] rendered ineffective assistance by failing to

---

[2]     There is a discrepancy in the record as to the date of the PCRA court's order. A citation and copy of the order reveals that it is dated May 15, 2014. *See Commonwealth v. Perry*, 2014 WL 10558055, at *8 (Pa. Super. 2014).

raise, on direct appeal, the jury's receipt of unmarked evidence." *Commonwealth v. Perry*, 2014 WL 10558055, at *3.

On February 4, 2015, the PCRA court held an evidentiary hearing. (Doc. 18-1, pp. 116-136). Attorney Tobias represented Perry at the February 4, 2015 hearing. (*Id.*). Appellate counsel, attorney Haynes, did not attend the hearing. (*Id.*). At the conclusion of the hearing, the PCRA court granted the petition and reinstated Perry's direct appeal rights based on initial appellate counsel's alleged failure to raise the issue of unmarked evidence being presented to the jury during deliberations. (*Id.*).

Both Perry and the Commonwealth appealed the PCRA court's February 4, 2015 ruling. On December 14, 2015, the Pennsylvania Superior Court reversed the PCRA court's reinstatement of Perry's direct appeal rights, decided that the matter need not be remanded for a hearing, and denied Perry's direct appeal as moot. (Doc. 18-1, pp. 138-147; *Commonwealth v. Perry*, 128 A.3d 1285 (Pa. Super. 2015). In its decision, the Superior Court found that the record did not support the PCRA court's conclusion that appellate counsel was ineffective. (*Id.*).

Perry filed a petition for allowance of appeal with the Pennsylvania Supreme Court. (*See* Doc. 18-1, p. 149). On June 28, 2016, the Pennsylvania Supreme Court denied the petition for allowance of appeal. (*Id.*; *Commonwealth v. Perry*, 636 Pa. 648, 141 A.3d 479 (Table)).

## III.    Standards of Review

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

### A.    Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).[3] Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *see also Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts). While the petitioner need not cite "book and verse" of the federal Constitution, *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting *Picard*, 404 U.S. at 275, 92 S.Ct. 509).

---

[3]    In Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and "unavailable" for purposes of exhausting state court remedies under § 2254. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004). Thus, to exhaust state remedies, a Pennsylvania prisoner need appeal only to the Pennsylvania Superior Court.

## B. Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore,

that review on the merits of the issues presented in a habeas petition is warranted, the

scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in

pertinent part, that an application for a writ of habeas corpus premised on a claim previously

adjudicated on the merits in state court shall not be granted unless:

(1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not

sufficient for the petitioner to show merely that his interpretation of Supreme Court

precedent is more plausible than the state court's; rather, the petitioner must demonstrate

that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*,

171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court

decision to be an unreasonable application of federal law if the decision, "evaluated

objectively and on the merits, resulted in an outcome that cannot reasonably be justified

under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a

state court's findings of fact are correct. A petitioner may only rebut this presumption with

9

clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[4]). Mere

---

[4] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

## IV.    Discussion

### A.    Ineffective Assistance of Counsel

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This right to effective assistance of counsel also extends to the first appeal. *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). In *Strickland*, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. *Strickland*, 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. *See id.*

In evaluating the first prong of the *Strickland* test, the court must be "highly deferential" toward counsel's conduct. *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* ("It is

11

all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. *Strickland*, 466 U.S. at 691; *United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. *See Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the

12

court is not required to consider the second prong of the test if the petitioner is unable to

satisfy the first one. *Strickland*, 466 U.S. at 697.

### 1. Ineffective Assistance of Trial Counsel

Perry alleges ineffective assistance of trial counsel, attorney Muller, on the following

grounds: (1) failure to present an alibi defense; (2) failure to challenge an alleged illegal

sentence under *Alleyne v. United States*, 570 U.S. 99 (2013) or *Apprendi v. New Jersey*,

530 U.S. 466 (2000); and, (3) failure to review the trial transcript to raise the issue of

unmarked evidence being submitted to the jury during its deliberations. (Doc. 1).

#### a. Alibi Defense

Perry alleges that trial counsel was ineffective for failing to present an alibi defense.

During the first PCRA hearing, trial counsel, Deanna Muller, testified as follows:

A.    Well, with respect to the alibi defense, there was [sic] several issues
with respect to that.
First of all, Ms. Stump was interviewed by Detective Krokos on, I
believe, the day that Mr. Perry was arrested. She indicated to the
detective at that time that he was – had not been present with her on
the date of the incident and, in fact, had not been at the residence for
several days.
She'd indicated to the detective that she had been in the hospital for
some type of infection, had been on medication, so forth. But she
gave him specific dates as to a few days prior to and I think a day or
so after the incident that he had not been present at the home.

Q.    Okay.

A.    When I interviewed her, she indicated to me that she was heavily
medicated the night of the incident, that she could not be sure whether

13

> or not he was there or not, and that she could – absolutely couldn't say for sure that he wasn't there or was there.
>
> So, she wasn't able to say one way or the other, which was a little but different than what – what she told the police. But in any event, she could not alibi him. So therefore, I can't file an alibi notice if I can't call an alibi witness.
>
> Q.    Okay. So that's the reason you did not file an alibi.
>
> A.    That's correct.

(Doc. 18-1, p. 97, N.T. 28:3-29:9, 4/16/14). With respect to the detective's testimony at trial,

he was called as a rebuttal witness and testified as follows:

> Q.    Detective . . . We heard just briefly from Mr. Perry that he stated he was with a girlfriend on the night of April 5th of the shooting. Did you investigate that information at all?
>
> A.    I did.
>
> Q.    And did you find that information to be true []or false?
>
> A.    I found it to be false.

(Doc. 18-1, p. 40, N.T. 142:13-21, 4/16/14).

The PCRA court ultimately determined that this ineffectiveness claim lacked merit.

The Pennsylvania Superior Court affirmed the PCRA court's determination, and found as

follows:

> In his second issue, Perry contends that Attorney Muller led him to believe that an alibi defense would be presented at trial. Brief for Appellant at 10. However, Perry asserts, because Attorney Muller failed to file a notice of an alibi defense, the Commonwealth objected when she elicited testimony from

14

Perry that he was at his girlfriend's house at the time of the alleged crimes. *Id.* at 11. Perry claims that, because Attorney Muller had no alibi witness, she should not have asked Perry leading questions that implicated an alibi defense. *Id.* at 12. Perry asserts that Attorney Muller was ineffective for failing to present a defense and an alibi witness to support the line of questioning during trial. *Id.* Perry contends that Attorney Muller's actions were not the product of a reasonable strategic decision, and he suffered prejudice as a result of her actions. *Id.*

In its Opinion, the PCRA court set forth the relevant law, addressed Perry's ineffectiveness claim regarding Attorney Muller, and concluded that it lacks merit. *See* PCRA Court Opinion, 5/16/14, at 6-8. Based on our review of the record, we conclude that the PCRA court's determination is supported by evidence of record and is free of legal error, and therefore affirm on this basis as to this issue. *See id.*

*Commonwealth v. Perry*, 2014 WL 10558055, at *2.

Under Pennsylvania law, an alibi defense "places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Commonwealth v. Ali*, 10 A.3d 282, 316 (Pa. 2010) (quoting *Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523, 537 n. 5 (Pa. 2009)) (quotations omitted). "At the core of an alibi defense is, of course, consistency between the date and time of the crime and that of the defendant's alibi." *Commonwealth v. Johnson*, 966 A.2d at 538.

The state court record supports a finding that trial counsel investigated and interviewed the potential alibi witness. Trial counsel, attorney Muller, testified that the possible alibi witness provided conflicting stories and, ultimately, the potential witness could

15

not recollect whether she was with Perry on the date of the incident. Trial counsel thus determined that the witness did not have any alibi testimony to offer, and therefore she did not pursue an alibi defense.

The Court does not hesitate to conclude that trial counsel was not ineffective for failing to pursue an alibi defense that did not exist. Perry has failed to meet his burden of showing that attorney Muller's performance was deficient, as required to prevail on a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 688-89. However, even assuming that Perry has shown that attorney Muller's performance fell beneath prevailing professional norms, Perry is unable to show that he suffered prejudice as a result of that deficient performance. In order to prove prejudice, Perry is required to show that the absence of Ms. Stump's testimony resulted in "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Attorney Muller testified that during her interview with Ms. Stump, she was unable to remember whether or not she was with Perry on the night of the incident. Similarly, at trial, Detective Krokos testified that, after an investigation, he found no validity to Perry's statement that he was with his girlfriend on the night of the incident. The Court concludes that Perry has not demonstrated that a reasonable probability exists that, if trial counsel had called Ms. Stump as an alibi witness, and presented an alibi defense, he would have been found not guilty. Furthermore, Perry has not shown that trial counsel's alleged failure to

present an alibi defense and alibi witness "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Accordingly, Perry has not met his burden under *Strickland* to prove that he was prejudiced by his trial counsel's failure to present an alibi defense and call Ms. Stump as an alibi witness. As such, this claim will be denied.

### b.    Illegal Sentence

Perry argues that trial counsel was ineffective for failing to challenge an alleged illegal sentence. The record reflects that Perry failed to raise this issue at the state court level. His failure to timely present this claim at the state level constitutes an independent and adequate state ground sufficient to support a procedural default of this claim. *Barnhart v. Kyler*, 318 F. Supp.2d 250 (M.D. Pa. 2004). The merits of Perry's procedurally defaulted claim cannot be reviewed unless he demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless*, 172 F.3d at 260; *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate "cause" for a procedural default, he must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *Lockhart v. Fretwell*, 506 U.S.

364, 366 (1993).

Perry acknowledges his procedural default of this claim, but asserts that an illegal sentence claim cannot be waived under Pennsylvania law. (Doc. 19, p. 13 ¶ 17). However, Perry's reliance on Pennsylvania case law is misplaced. Under Pennsylvania law, "challenges to an illegal sentence can never be waived and may be reviewed *sua sponte* by [the state reviewing] Court." *Commonwealth v. Tanner*, 61 A.3d 1043, 1046 (Pa. Super. 2013) (citation omitted). The fact that an illegal sentencing claim cannot be waived in state court, however, does not provide a federal court with jurisdiction to consider the claim in the first instance. "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Thus, Perry has procedurally defaulted this claim, and failed to establish any cause and prejudice to excuse it. Nor is there any indication that a failure to review this claim will result in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995) (providing that "miscarriage of justice" exception requires petitioner to come forward with new evidence of actual innocence). Consequently, Perry is precluded from pursuing federal habeas corpus relief with regard to this issue.

Furthermore, any attempt by Perry to exhaust his state remedies at this time would be futile, because this claim is procedurally defaulted due to waiver of the claim and expiration of the PCRA statute of limitations. *See* 42 Pa. C.S.A. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"); 42 Pa. C.S.A. § 9545(b) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final"). As such, Perry is in procedural default for failing to comply with the state filing requirements.

c.    Unmarked Evidence

Perry next argues that trial counsel was ineffective for failing to challenge the jury's receipt of unmarked evidence during its deliberations. The state court record clearly reflects that trial counsel was unaware that the jury received the unmarked evidence, and that the trial judge never informed counsel of the fact that unmarked evidence was sent to the jury deliberation room. At the PCRA hearing, trial counsel testified as follows:

Q.    With regard to the evidence that was alleged to have been improperly presented to the jury during deliberations, . . . you only heard of this during PCRA proceedings. Is that correct?

A.    Right.

Q.    And you were never apprised of the allegation that there was a piece of evidence the jury had in their possession which was not admitted as

19

an exhibit at trial.

A. No. And, I mean, I just assumed from the trial transcript that something inadvertently went up. But again, I don't know what that is--

Q. Okay.

A. -- or what that was.

(Doc. 18-1, p. 99, N.T. 35:23-36:12, PCRA Hearing 4/16/14). Additionally, in its 1925(a)

Memorandum Opinion, the trial court acknowledged that counsel was not informed of the

jury's receipt of the unmarked evidence. (Doc. 18-1, pp. 104-05).

The Pennsylvania Superior Court addressed this claim in terms of appellate

counsel's ineffectiveness for failing to raise, on direct appeal, trial counsel's alleged

ineffectiveness for failing to challenge the jury's receipt of unmarked evidence. The

Superior Court ultimately concluded that Perry's ineffectiveness claims regarding trial

counsel lacked arguable merit, and appellate counsel was not ineffective for failing to raise

them in Perry's direct appeal. The Pennsylvania Superior Court affirmed the PCRA court's

determination, and found as follows:

> In his third issue, Perry contends that he did not become aware that the jury had mistakenly received unmarked evidence until after he read his trial transcript. Brief for Appellant at 13. Perry claims that, although he told Attorney Haynes [appellate counsel] of this mistake, she did not include this claim in his direct appeal. Id. Instead, Perry asserts, the only issue that she raised in his direct appeal was that his sentence was excessive and unreasonable. Id. Perry also contends that Attorney Haynes failed to raise the above-discussed issues of Attorney Muller's [trial counsel] ineffectiveness on direct appeal. Id. Perry asserts that, because Attorney Haynes had no

reasonable basis for failing to raise Attorney Muller's ineffectiveness in his direct appeal, Attorney Haynes was ineffective and prejudice can be presumed. *Id.*

Initially, we observe that the PCRA court failed to address Perry's claims regarding Attorney Haynes['] ineffectiveness in its dismissal Opinion, despite the fact that this issue was raised in Perry's amended Petition. *See* PCRA Court Opinion, 5/16/14, at 6-8; *see also* PCRA Court Pa.R.A.P. 1925(a) Opinion, 6/30/14, at 2 (wherein the PCRA court acknowledged that it failed to address this issue in its dismissal Opinion). Nevertheless, because the issue of whether Attorney Haynes was ineffective for failing to raise the issue of Attorney Muller's ineffectiveness on direct appeal is easily resolvable on the record and the briefs, we will address it. *See Commonwealth v. Ali*, 10 A.3d 282, 317 n. 26 (Pa. 2010).

Litigation of ineffectiveness claims is not generally a proper component of a defendant's direct appeal, and is presumptively deferred for collateral attack under the PCRA. *See Commonwealth v. Holmes*, 79 A.3d 562, 578 (Pa. 2013) (establishing a deferral rule for ineffectiveness claims litigated after its decision in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002)). The Pennsylvania Supreme Court has recognized two exceptions to the rule that ineffectiveness claims should be deferred until collateral review, both falling within the discretion of the trial court:

> First, we held that trial courts retain discretion, in extraordinary circumstances, to entertain a discrete claim of trial counsel ineffectiveness if the claim is both apparent from the record and meritorious, such that immediate consideration best serves the interest of justice. Second, we held that trial courts also have discretion to entertain prolix claims of ineffectiveness if there is a good cause shown and the unitary review thus permitted is accompanied by a knowing and express waiver by the defendant of the right to pursue a first PCRA petition.

*Commonwealth v. Arrington*, 86 A.3d 831, 856-57 (Pa. 2014).

Perry has not argued that his ineffectiveness claims regarding Attorney Muller fall within either exception to the rule that such claims should be deferred until

21

collateral review, such that Attorney Haynes could have raised them on direct appeal. *Moreover, given our conclusion that Perry's ineffectiveness claims regarding Attorney Muller lack arguable merit, Attorney Haynes cannot be deemed ineffective for failing to raise them in Perry's direct appeal. See Commonwealth v. Weiss, 81 A.3d 767, 783 (Pa. 2013).* Thus, based on our review of the record, we cannot grant Perry relief on this claim.

*Commonwealth v. Perry*, 2014 WL 10558055, at *2-3 (emphasis added).

The record reflects that trial counsel was unaware that the jury received the unmarked evidence and, thus, was unable to challenge the jury's receipt of the unmarked evidence. (*See* Doc. 1, pp. 9, 11, 12; Doc. 18-1, pp. 104-05). Perry has failed to meet his burden of showing that attorney Muller's performance was deficient because the record plainly indicates that trial counsel was never aware that the jury received the unmarked evidence. *Strickland*, 466 U.S. at 688-89. The Court concludes that Perry has not met his burden under *Strickland* and this claim will be denied.

## 2. Ineffective Assistance of Appellate Counsel for Failure to Raise Issues on State Direct Appeal

Perry alleges ineffective assistance of appellate counsel, attorney Haynes, on the following grounds: (1) failure to raise a vindictive sentencing claim on resentencing; (2) failure to raise the issue of unmarked evidence being submitted to the jury during its deliberations; and, (3) failure to raise a merger issue with respect to the attempted murder and aggravated assault charges. (Doc. 1).

### a. Vindictive Sentence

Perry alleges that appellate counsel's failure to challenge the sentence imposed during resentencing as a result of judicial vindictiveness was ineffective. On direct appeal, appellate counsel argued that Perry's sentence was excessive and unreasonable because the trial judge failed to consider mitigating factors.

The Due Process Clause prohibits judicial vindictiveness against a defendant "for having successfully attacked his first conviction . . . in the sentence he receives after a new trial." *Alabama v. Smith*, 490 U.S. 794, 798 (1989) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969)). The presumption of vindictiveness "may be overcome only by objective information in the record justifying the increased sentence." *Wasman v. United States*, 468 U.S. 559, 565 (1984). The burden of proof falls on the prosecutor or sentencing tribunal when the presumption of vindictiveness applies. *Id.* at 569. The presumption of vindictiveness is not triggered "when the aggregate sentence is less than that originally imposed . . . ." *United States v. Nerius*, 824 F.3d 29, 32 (3d Cir. 2016) (quoting *Kelly v. Neubert*, 898 F.2d 15, 16, 18 (3d Cir. 1990)). "When there is no such reasonable likelihood [of judicial vindictiveness], the burden remains upon the defendant to prove actual vindictiveness." *Wasman*, 468 U.S. at 799-800.

In Pennsylvania, the trial court, as a matter of law, has discretion to modify its own sentence in response to a motion for reconsideration of sentence. *See Commonwealth v. Robinson*, 931 A.2d 15, 24 (Pa. Super. 2007) (*en banc*). However, any increase in

sentence cannot be the result of judicial vindictiveness. *Commonwealth v. Greer*, 554 A.2d 980, 987 n. 7 (Pa. Super. 1989) (applying *Pearce*, 395 U.S. 711). "[I]n the absence of a presumption of vindictiveness, the defendant must affirmatively prove actual vindictiveness." *Commonwealth v. Tapp*, 997 A.2d 1201, 1205 (Pa. Super. 2010) (citations omitted).

At the initial sentencing, the trial judge imposed an aggregate sentence of 25 to 50 years' imprisonment. At Perry's resentencing, the same judge again imposed an aggregate sentence of 25 to 50 years' imprisonment. It is clear that the judge did not impose an increased sentence at resentencing. Nonetheless, Perry argues that appellate counsel was ineffective for failing to argue that his sentence was imposed as a result of the trial judge's vindictiveness. Construing Perry's claim liberally, his argument appears to be that his sentence was severe because the trial judge failed to consider mitigating factors.

While the Pennsylvania Superior Court did not squarely confront the merits of this issue, it found that Perry failed to preserve the mitigating circumstances issue for review and concluded that the argument did not raise a substantial question. (Doc, 18-1, pp. 59-62, *Commonwealth v. Perry*, No. 656 MDA 2012 (Pa. Super. Dec. 20, 2012) (citing *Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa. Super. 2010) ("[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review."))). Perry has failed to establish a claim for ineffective assistance of his appellate counsel because the Superior Court expressly

determined that his argument that the sentencing judge did not consider mitigating factors

did not raise a substantial question for appellate review. Furthermore, the trial court did not

increase Perry's sentence at resentencing and, thus, the "presumption of vindictiveness"

was not triggered. *See Pearce*, 395 U.S. 711; *Nerius*, 824 F.3d at 32. This Court finds that

appellate counsel's decision to forego raising a meritless claim did not violate professional

norms. *See Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) ("Appealing losing issues

'runs the risk of burying good arguments . . . in a verbal  mound made up of strong and

weak contentions.'") (citations omitted). As such, appellate counsel's failure to raise a

meritless claim could not have prejudiced Perry. *See Strickland*, 466 U.S. 668. Thus, Perry

is not entitled to habeas relief on this claim.

> b.     Unmarked Evidence

Perry claims that appellate counsel was ineffective for failing to raise, on direct

appeal, the jury's receipt of unmarked evidence. The Pennsylvania Superior Court

addressed this claim as follows:

> After his conviction, Perry reviewed his trial transcript and discovered that the
> jury had unmarked evidence with it in the deliberation room. Although the
> record does not identify with precision the evidence that the jury mistakenly
> received, the following *ex parte* communication between the trial judge and
> the jury appears in the transcript.
>
> (The following occurred at 12:17 p.m. in the jury deliberation room, outside
> the presence of counsel and the defendant.)
>
> > The Court:    Instead of dragging you all down, I figured I'd

> come up. I have your request to see both 9-1-1
> transcripts. You have a copy?

> A voice: No. This is the only thing we got.

> The Court: You weren't even supposed to get that. They
> weren't marked as part of the evidence. So
> whatever's marked as evidence comes up to you.
> Otherwise, you have to just use your recollection
> and recall based on the trial. So that's the
> answer. All right? Thank you, ladies and
> gentlemen.

> (Deliberations resumed at 12:19 p.m.)

> Notes of Testimony ("N.T."), 11/15/2011, at 164. The trial court did not
> inform defense counsel or the Commonwealth that the jury had
> unmarked evidence with it in the deliberation room.

According to Perry, he pointed out the above-quoted exchange to his
appellate counsel after reviewing the transcript, and asked her to pursue the
issue on direct appeal. Nevertheless, counsel filed an appeal challenging
only the discretionary aspects of Perry's sentence. On December 20, 2012,
in an unpublished memorandum decision, this Court affirmed Perry's
judgment of sentence. See Commonwealth v. Perry, 656 MDA 2012 (Pa.
Super. Dec. 20, 2012).

On November 8, 2013, Perry filed a timely PCRA petition. Therein, Perry
alleged various instances of ineffective assistance of trial and appellate
counsel. Relevant to this appeal, Perry alleged that his appellate counsel
was ineffective for failing to challenge on direct appeal the jury's receipt of
unmarked evidence. On April 16, 2014, the PCRA court held a hearing on
Perry's petition. Appellate counsel did not testify at that hearing.

On May 16, 2014, the PCRA court entered an order and opinion dismissing
Perry's petition. Notwithstanding the fact that Perry raised the issue of
appellate counsel's ineffectiveness in his petition for relief, the PCRA court
did not address that claim in its opinion. On December 30, 2014, this Court

vacated the PCRA court's order dismissing Perry's petition and remanded the matter for an evidentiary hearing on the issue of whether appellate counsel had rendered ineffective assistance by failing to challenge on direct appeal the jury's receipt of unmarked evidence. *See Commonwealth v. Perry*, 917 MDA 2014, 2014 WL 10558055 (Pa. Super. Dec. 30, 2014).

On February 4, 2015, the PCRA court held an evidentiary hearing. Perry did not subpoena appellate counsel, and she did not attend the hearing. Frustrated by appellate counsel's absence, the PCRA court took a brief recess "to make a phone call." N.T., 2/4/2015, at 4. When the hearing resumed, the PCRA court called to the stand and questioned appellate counsel's colleague (who also served as Perry's trial counsel) from the Dauphin County Public Defender's Office.

According to trial counsel, appellate counsel was never given notice of the PCRA hearing and was unavailable to testify because she was out of the state due to a family emergency. *Id.* at 7. Unsurprisingly, trial counsel could not provide any insight into appellate counsel's failure to assert on appeal that the jury was given unmarked evidence. Trial counsel testified only that the trial transcript indicates that the jury was given unmarked evidence and that appellate counsel did not raise the issue on direct appeal. She then purported to concede on behalf of the public defender's office that appellate counsel was ineffective. *See id.* ("[I]t appears that—it would be my opinion, I believe the opinion of my superiors as well, that we would concede [appellate counsel's] ineffectiveness for not raising the issue because it's in the transcript[.]"). At the conclusion of the hearing, the PCRA court granted Perry's petition and reinstated his direct appeal rights *nunc pro tunc*.

On February 11, 2015, the Commonwealth filed a notice of appeal. On February 19, 2015, the PCRA court issued an order directing the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth timely complied. On April 22, 2015, the PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a).

The Commonwealth presents one issue for our consideration: "Whether the PCRA court erred in finding [Perry's] appellate attorney ineffective when [Perry's] appellate attorney was not presented as a witness at his PCRA

27

evidentiary hearing and no testimony was offered from [Perry's] appellate attorney to be considered in the court's determination of appellate counsel's effectiveness [.]" Brief for Commonwealth (420 MDA 2015) at 4 (capitalization modified).

> This Court analyzes PCRA appeals "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012). Our "review is limited to the findings of the PCRA court and the evidence of record" and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." *Id.* Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." *Id.* (citations omitted). "[W]here the petitioner raises questions of law, our standard of review is de novo and our scope of review is plenary." Finally, we "may affirm a PCRA court's decision on any grounds if the record supports it." *Id.*

*Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014).

Pennsylvania has recast the two-factor inquiry regarding the effectiveness of counsel set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as the following three-factor inquiry:

> [I]n order to obtain relief based on [an ineffective assistance of counsel ("IAC") ] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Commonwealth v. Reed*, 601 Pa. 257, 971 A.2d 1216, 1221 (2009) (citing *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987)). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the

28

claim. *Commonwealth v. Martin*, 607 Pa. 165, 5 A.3d 177 (2010). Trial counsel is presumed to be effective, and a PCRA petitioner bears the burden of pleading and proving each of the three factors by a preponderance of the evidence. *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa. Super. 2006).

The PCRA court granted Perry's petition and reinstated his direct appeal rights *nunc pro tunc*. On appeal, the Commonwealth maintains that the record does not support the PCRA court's conclusion that appellate counsel was ineffective. We agree.

When evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential. Counsel will not be deemed ineffective where the strategy employed had some reasonable basis designed to effectuate his or her client's interests. *See Commonwealth v. Lesko*, 609 Pa. 128, 15 A.3d 345, 380 (2011) ("Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests."). Instantly, Perry failed to demonstrate that appellate counsel lacked a reasonable basis for failing to assert on appeal that Perry was entitled to a new trial because the jury had access to unmarked evidence during its deliberations. Because appellate counsel was not present at the evidentiary hearing, the PCRA court was left to speculate as to whether counsel declined to pursue this issue as a matter of strategy, or, by contrast, whether counsel negligently overlooked it.

In its 1925(a) opinion, the PCRA court does not discuss or analyze any of the *Pierce* factors. *See* Trial Court Opinion, 4/22/2015, at 3. Instead, the court relies entirely upon trial counsel's testimony at the PCRA hearing, wherein trial counsel purported to concede that appellate counsel was ineffective. Trial counsel's opinion of her colleague's effectiveness is irrelevant. Trial counsel had no idea why appellate counsel neglected to raise the unmarked evidence issue. Trial counsel simply pronounced appellate counsel's ineffectiveness based upon the former's review of the trial transcript.

Our Supreme Court has cautioned that, "[a]s a general rule, a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." *Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 132 (2012). "The ultimate focus of an ineffectiveness inquiry is

always upon counsel, and not upon an alleged deficiency in the abstract." *Id.* Stated simply, the record before us is devoid of any evidence to overcome the presumption that counsel was effective. Perry's failure to demonstrate that appellate counsel had no reasonable basis for her actions is fatal to his IAC claim. *See Rathfon, supra* (stating that a PCRA petitioner bears the burden of pleading and proving each of the *Pierce* factors by a preponderance of the evidence).

Because the PCRA court's decision is unsupported by the certified record, we reverse the February 4, 2015 order granting Perry's petition for relief and reinstating his direct appeal rights *nunc pro tunc.* As a consequence, Perry's appeal at 265 MDA 2015, which arises from that order, is moot.

Order reversed. Jurisdiction relinquished.

. . .

CONCURRING AND DISSENTING OPINION BY STRASSBURGER, J.:

For the reasons that follow, I respectfully dissent to the result reached by the learned Majority at Docket Number 420 MDA 2015 and concur in the result reached by the learned Majority at Docket Number 265 MDA 2015.

As to Docket Number 420 MDA 2015, the PCRA court originally denied Perry's PCRA petition in an order entered on May 16, 2014, and Perry appealed that order. As a result of that appeal, this Court vacated the PCRA court's order and remanded for an evidentiary hearing. This Court offered the following discussion in support of our decision:

> [ ]Perry's claim that [appellate counsel] was ineffective for
> failing to raise, on direct appeal, the jury's receipt of unmarked
> evidence cannot be resolved on the certified record. As
> recognized by the PCRA court, this issue was not pursued or
> addressed at the evidentiary hearing. Our review of the
> certified record discloses that [appellate counsel] did not testify
> at the evidentiary hearing, and the record is devoid of her
> response to Perry's claim that he had informed her of the jury's
> receipt of unmarked evidence. Nevertheless, the PCRA [c]ourt
> acknowledged that this claim was addressed in Perry's briefs

30

following the evidentiary hearing.

> To enable appellate review, PCRA courts are required to
> provide a legally robust discussion, complete with clear findings
> of fact where required. A factfinding court should support its
> holding with sufficient explanations of the facts and law to
> facilitate appellate review. Where a petitioner has presented a
> claim to the PCRA court and that court has not addressed it, a
> remand is appropriate where the claim cannot be resolved on
> the record. [P]articularly in close cases, a developed
> post-conviction record accompanied by specific factual findings
> and legal conclusions is an essential tool necessary to sharpen
> the issues. Thus, we vacate the [o]rder of the PCRA court and
> remand this matter to the PCRA court to conduct an evidentiary
> hearing on the issue of whether [appellate counsel] rendered
> ineffective assistance by failing to raise, on direct appeal, the
> jury's receipt of unmarked evidence.

*Commonwealth v. Perry*, 917 MDA 2014, 2014 WL 10558055 (Pa. Super.
Dec. 30, 2014) (unpublished memorandum at 6-7) (citations and quotation
marks omitted).

Thus, this Court vacated the PCRA court's order and remanded the matter,
specifically directing the PCRA court to conduct an evidentiary hearing to
determine whether appellate counsel was ineffective by failing to raise on
direct appeal the issue regarding the jury's receipt of unmarked evidence. In
my view, this Court's Memorandum clearly spelled out that appellate
counsel's testimony was required at the hearing.

At the evidentiary hearing on remand, the PCRA court was immediately made
aware of the fact that appellate counsel was not present for the hearing
because, *inter alia*, she had a family emergency. At that point, the PCRA
court knew or should have known that it could not comply with this Court's
instructions. Rather than postponing or continuing the hearing, the court held
a hearing without appellate counsel and granted Perry relief in the form of
reinstatement of his appellate rights.

Because the PCRA court failed to follow this Court's directions on remand, I

31

would vacate the PCRA court's most recent order and remand the matter with
directions to hold an evidentiary hearing in compliance with this Court's
previous Memorandum. Such a result at Docket Number 430 MDA 2015
would render moot Perry's appeal at Docket Number 265 MDA 2015;
consequently, I too would dismiss that appeal.

*Commonwealth v. Perry*, 128 A.3d 1285, 1287-91 (Pa. Super. 2015) (footnotes omitted).

Because appellate counsel was not present at the PCRA hearing, the state courts

never heard any testimony from appellate counsel as to why she neglected to raise the

unmarked evidence issue, and did not have the benefit of this crucial testimony in

determining whether appellate counsel was ineffective in this regard. As such, because the

state court record is undeveloped as to this issue, this Court is unable to determine whether

appellate counsel's performance was deficient under *Strickland*. Consequently, the habeas

petition will be granted on this claim and this matter will be remanded to the state PCRA

court to conduct an evidentiary hearing to determine whether appellate counsel, attorney

Andrea Haynes, was ineffective by failing to raise, on direct appeal, the jury's receipt of

unmarked evidence. At this hearing, appellate counsel's testimony is required in order to

fully develop this issue.

c.    Merger Issue

Perry next alleges that appellate counsel was ineffective by failing to raise a merger

issue on appeal with respect to the aggravated assault and criminal attempt to commit

homicide convictions. Upon review of the state court record, appellate counsel argued, on

32

direct appeal, that Perry's sentence was excessive and unreasonable, and that the trial court abused its discretion by imposing an aggregate sentence of 25 to 50 years' imprisonment. (See Doc. 18-1, pp. 60, 75-76). It is not clear whether appellate counsel raised a claim with respect to Pennsylvania's merger doctrine. Because the state court record is unclear as to this issue, this Court is unable to determine whether appellate counsel's performance was deficient under *Strickland*. However, as outlined below, it is clear that Perry's aggravated assault and criminal attempt to commit homicide convictions did not merge for sentencing purposes.

At Perry's initial sentencing, the trial court sentenced him to consecutive terms of ten to twenty years' imprisonment for one count of criminal attempt, ten to twenty years' imprisonment for one count of aggravated assault, and five to ten years' imprisonment for carrying a firearm without a license. (See Doc. 18-1, p. 59 n. 3, *Commonwealth v. Perry*, No. 656 MDA 2012 (Pa. Super. Dec. 20, 2012)). Perry was sentenced to one to two years' imprisonment for the convictions of persons not to possess firearms and recklessly endangering another person, to be served concurrently. (*Id.*). At the initial sentencing, the court ordered one of the aggravated assault convictions merged with the criminal attempt conviction for sentencing purposes. (*Id.*).

At Perry's resentencing, the trial court imposed the same sentences with respect to the criminal attempt, aggravated assault, persons not to possess firearms, and recklessly

endangering another person convictions. (Doc. 18-1, pp. 51-52, Amended Sentencing Order). Specifically, Perry was sentenced to ten to twenty years' imprisonment for one count of criminal attempt, ten to twenty years' imprisonment for one count of aggravated assault, and one to two years' imprisonment for the convictions of persons not to possess firearms and recklessly endangering another person. (*Id.*). With respect to the conviction of carrying a firearm without a license, the court imposed a sentence of three to six years' imprisonment. (*Id.*). Therefore, the sentence remained as an aggregate term of 25 to 50 years' imprisonment. (*Id.*). The sentencing court also ordered that all of the sentences shall run consecutively to one another. (*Id.*). However, the Sentencing Order is silent as to whether one of the aggravated assault convictions merged with the criminal attempt to commit homicide conviction. (*See id.*).

Under Pennsylvania law, two convictions merge into one another if the crimes constitute greater and lesser offenses, and the crimes charged are based on the same facts. *See Commonwealth v. Shank*, 883 A.2d 658 (Pa. Super. 2005); 42 Pa.C.S. § 9765. In Pennsylvania, aggravated assault and attempted murder are the same "in law" because aggravated assault is a lesser included offense of attempted murder. *Commonwealth v. Anderson*, 650 A.2d 20, 24 (1994) ("Inasmuch as aggravated assault, the lesser offense, contains some, but not all the elements of the greater offense, attempted murder, the two offenses merge for purposes of sentencing."). Thus, Perry's convictions are the same "in

34

law."  Perry's convictions also appear to be the same "in fact" because both convictions

arose from one continuous criminal act.  Because Perry's convictions for aggravated assault

and criminal attempt to commit homicide are the same in law and fact, his rights may have

been violated by the imposition of consecutive, non-merged sentences for these two

convictions and, as such, appellate counsel may be deemed ineffective in the event that this

issue was not raised on appeal.

Consequently, the habeas petition will be granted on this claim and remanded to the

state PCRA court to conduct an evidentiary hearing to determine whether appellate counsel,

attorney Andrea Haynes, raised this issue on appeal and, if this issue was not raised on

appeal, whether counsel was ineffective in failing to raise, on direct appeal, that Perry's

criminal attempt to commit homicide and aggravated assault convictions should have

merged for sentencing purposes.

### 3.    *Ineffective Assistance of PCRA Counsel*

Perry claims that he was denied the effective assistance of counsel in state court

PCRA proceedings.  However, freestanding claims of ineffective assistance of PCRA

counsel are not cognizable in federal habeas proceedings.  *See* 28 U.S.C. § 2254(i) ("The

ineffectiveness or incompetence of counsel during Federal or State collateral

post-conviction proceedings shall not be a ground for relief in a proceeding arising under

section 2254."); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555-56 (1987) (no

constitutional right to counsel in collateral post-conviction proceedings); *Coleman v. Thompson*, 501 U.S. 722, 755 (1991) (no constitutional right to counsel on appeal from initial collateral post-conviction proceedings).

Perry's reliance on the United States Supreme Court's decision in *Martinez* for this claim is misplaced. *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 1316, 182 L.Ed.2d 272 (2012). The *Martinez* Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. *Martinez* does not provide a basis for finding a freestanding claim of ineffective assistance of PCRA counsel cognizable on federal habeas review. *See id.* Consequently, the petition will be denied with respect to Perry's ineffective assistance of PCRA counsel claims as they are not cognizable on federal habeas review.

## B.   Denial of Right to an Impartial Jury

Perry argues that the trial court erred by allowing unmarked evidence to be submitted to the jury, and he was denied the right to an impartial jury when the jury received the unmarked evidence during its deliberations. Respondent contends that this claim was not properly exhausted in state court. Petitioner acknowledges that "the merits of this claim have yet to be addressed by any forum." (Doc. 19, p. 16 ¶ 21). Thus, Perry acknowledges his procedural default of this claim, but asserts, *inter alia*, that the state appellate court

should have raised this issue *sua sponte*. (*Id.*).

The Pennsylvania Superior Court addressed Perry's claim that the trial court erred by allowing unmarked evidence to be submitted to the jury, and found that this issue was waived. The Superior Court found as follows:

> In his first issue, Perry contends that, during an *ex parte* communication between the trial judge and the jury during their deliberations, the jury showed evidence to the trial judge. Brief for Appellant at 14. In response, Perry asserts, the trial judge responded "[y]ou weren't even supposed to get that. They weren't marked as part of the evidence." Id. (citing N.T., 11/15/11, at 164). Perry asserts that the trial judge erred by failing to inform counsel of the *ex parte* communication or the fact that unmarked evidence was sent to the jury deliberation room. *Id.* at 15. Perry points out that the record does not reflect the nature of the unmarked evidence that the jury mistakenly received, and the trial judge cannot recall the nature of the unmarked evidence. *Id.* (citing PCRA Court Pa.R.A.P.1925(a) Opinion, 6/30/14, at 3). Perry claims that he was entitled to a presumption of prejudice, which the Commonwealth failed to overcome, thereby entitling him to a new trial. Brief for Appellant at 15-16.
>
> Perry failed to raise this issue in his Concise Statement. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa.1998) (stating that, if an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P.1925(b), any issues not raised in that statement are waived). Further, Perry did not raise this issue in his amended PCRA Petition. Accordingly, Perry failed to preserve this issue for our review. *See* Pa.R.A.P. 302(a) (stating that issues not raised in the lower court are waived and cannot be raised for the first time on appeal).
>
> Moreover, this claim is not cognizable under the PCRA. *See* 42 Pa.C.S.A. § 9543(a)(2); *see also id.* § 9544(b) (stating that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"); *Commonwealth v. Jones*, 876 A.2d 380, 383-84 (Pa. 2005) (stating that any claims that have been waived by a petitioner are beyond the power of this

Court to review). Thus, even if this claim had been preserved, Perry is not entitled to relief.

*Commonwealth v. Perry*, 2014 WL 10558055, at *1-2.

Perry has waived this claim under state law and, as a result, has procedurally defaulted this claim in this forum. *See Suarez v. Pennsylvania*, 2014 WL 2922283 (M.D. Pa. 2014) (concluding that where the state court on direct appeal found the claims waived because no objection had been made at trial, federal habeas review is precluded unless the petitioner can demonstrate cause and prejudice, or that a failure to consider the claims will result in a fundamental miscarriage of justice) (citing *Sloan v. Attorney General of Pennsylvania*, 2010 U.S. Dist. LEXIS 101854, *33-34 (W.D. Pa. 2010)); *Solano v. Lamas*, 2014 WL 2567166 (M.D. Pa. 2014). Perry is not entitled to federal habeas review unless he can meet his burden of establishing "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-63 (1989); *Morris v. Horn*, 187 F.3d 333, 342 (3d Cir. 1999). The Court finds that Perry has failed to establish any cause and prejudice to excuse his procedural default of this claim. Nor is there any indication that a failure to review this claim will result in a fundamental miscarriage of justice. *See Schlup*, 513 U.S. at 327. Consequently, Perry is precluded from pursuing federal habeas corpus relief with regard to this issue.

Furthermore, as stated *supra*, any attempt by Perry to exhaust his state remedies at

this time would be futile, because this claim is procedurally defaulted due to waiver of the claim and expiration of the PCRA statute of limitations. As such, Perry is in procedural default for failing to comply with the state filing requirements.

## V.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not debate this Court's rulings with respect to the claims on which it denies relief, a certificate of appealability will not issue for those claims.

## VI. Conclusion

For the reasons set forth above, the petition for writ of habeas corpus will be granted in part and denied in part.

A separate Order shall issue.

Date: February ___, 2019

Robert D. Mariani
United States District Judge